**Harold V. BROWN, Appellant,**

v.

**TRANS WORLD AIRLINES, INC.,
et al., Appellees.**

No. 83–2524.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1984.

Decided Oct. 26, 1984.

Rehearing Denied Dec. 3, 1984.

Alvin Shapiro, Kansas City, Mo., for appellant.

Larry W. Joye (argued), Michael D. Gordon and Morris J. Nunn, Kansas City, Mo., for appellee.

Before LAY, Chief Judge, FAGG, Circuit Judge, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

Harold Brown (plaintiff) was employed by Trans World Airlines (TWA) under TWA's collective bargaining agreement with the International Association of Machinists and Aerospace Workers (Union). After he was fired, plaintiff brought this action against the Union and TWA alleging unfair representation by the Union, improper discharge by TWA, and collusion between the Union and TWA. The district court[1] granted summary judgment for the defendants on the ground that undisputed facts showed there was no breach of the Union's duty of fair representation and no collusion between the Union and TWA. 569 F.Supp. 247. We affirm.

---

* The Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

## FACTS

The plaintiff was fired under Article 6(d)(10) of the collective bargaining agreement:

> An employee will lose his seniority status and his name will be removed from the seniority list(s) under the following conditions: ... (10) he is absent three (3) consecutive work days without notifying the company, unless satisfactory reason is given.

Except as noted, the facts surrounding plaintiff's firing were undisputed below. On June 10, 1980, plaintiff became ill at work. He was treated at TWA's first aid facility by a TWA employee, who diagnosed a possible kidney stone. Plaintiff was given pain medication and left work. Before he left, plaintiff told his supervisor, Eldon Schultz, that he would see his doctor the next day if the pain persisted.

The next day plaintiff did see his doctor, who prescribed medication. The following day, June 12, plaintiff was admitted to a hospital with severe pain. A hospital nurse called Schultz, plaintiff's supervisor, and told him that plaintiff was heavily sedated and had a possible kidney problem. Plaintiff remained hospitalized until June 15, during which time he was treated for a kidney stone.

On June 16, Brown telephone Schultz. Another of Brown's supervisors, Idevan Cummings, listened in on the conversation. Plaintiff generally reviewed his hospitalization and said he was going to have lab tests the next day. Plaintiff claims he also advised Schultz that he would be off work for two or three more weeks. Schultz and Cummings deny that plaintiff made any such statement. On the same day that plaintiff called, Schultz talked to a hospital nurse who confirmed that plaintiff had been in the hospital.

Brown did not return to work or contact TWA through June 26, when he was fired

---

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

for being absent without notice three consecutive work days.

After plaintiff was fired, the Union processed a grievance through every step of the grievance procedure, including arbitration before the System Board of Adjustment, which upheld the firing. Through step 2 of the procedure, plaintiff's grievance was handled by the Union's local office and plaintiff was represented by Albert Calhoun. After step 2, the grievance was handled by the district office and plaintiff was represented by Gary Poos.

## APPLICABLE SUBSTANTIVE STANDARDS

Plaintiff's discharge claim against TWA is governed by the Railway Labor Act, 45 U.S.C. §§ 151–188 (RLA). 45 U.S.C. §§ 181, 185. Under the RLA, it is unclear whether plaintiff can maintain his claim against TWA, even if he establishes unfair representation by the Union and collusion between TWA and the Union. The RLA provides that

> the findings and order of the [Board] shall be conclusive on the parties, except that the order of the [Board] may be set aside, in whole or in part, or remanded to the [Board], for failure of the [Board] to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the [Board's] jurisdiction, or for fraud or corruption by a member of the [Board].

45 U.S.C. § 153 First (q). The Supreme Court has stated that

> in at least some situations the Act makes the federal administrative remedy exclusive, rather than merely requiring exhaustion of remedies in one forum before resorting to another. A party who has litigated an issue before the Adjustment Board on the merits may not relitigate that issue in an independent judicial proceeding.

*Andrews v. Louisville & Nashville Railroad Co.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972). However, in *Glover v. St. Louis-San Francisco Railway Company,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), the Supreme Court recognized an exception to the exclusivity of the RLA remedies where an employee has not exhausted those remedies and alleges collusion between his union and his employer. *See also Raus v. Brotherhood of Railway Carmen,* 663 F.2d 791 (8th Cir.1981). It is unclear whether the exception of *Glover* to the exclusivity of the RLA remedies applies where, as here, the employee has exhausted his RLA remedies. However, it is clear that to prevail on any claim against TWA plaintiff must first establish unfair representation by the Union. *Glover,* 393 U.S. 324, 89 S.Ct. 548; *Hines v. Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Raus,* 663 F.2d 791. Since we affirm the district court's determination that the undisputed facts show no breach of the Union's duty, we need not address the issue of whether plaintiff could maintain a claim against TWA if he established unfair representation by the Union.

To establish unfair representation by the Union, plaintiff must show that the Union's handling of his grievance was perfunctory, arbitrary, discriminatory, or in bad faith. *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 47, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979); *Vaca v. Sipes,* 386 U.S. 171, 190–91, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *Curtis v. United Transportation Union,* 700 F.2d 457 (8th Cir.1983). To show that the Union acted in a perfunctory manner, there must be evidence that the Union acted without concern or solicitude, or gave plaintiff's grievance only cursory attention. *Curtis,* 700 F.2d 457; *Tatum v. Frisco Transportation Co.,* 626 F.2d 55 (8th Cir. 1980); *Minnis v. UAW,* 531 F.2d 850 (8th Cir.1975).

Plaintiff has claimed that his discharge was a result of collusion between the Union and TWA. Collusion would certainly be a form of bad faith and would therefore constitute unfair representation. However, because the claim of collusion raises different factual issues than a claim

of unfair representation not based on collusion, we will treat the collusion claim separately in our analysis of whether summary judgment was proper.

■ Plaintiff complains that in its order granting summary judgment, the district court referred to negligence standards and characterized plaintiff's claim against the Union as a "malpractice claim." It is true that the ultimate standard governing plaintiff's unfair representation claim is not one of attorney malpractice or of negligence. However, many decisions have stated that negligence is not sufficient to establish breach of the duty of fair representation. *See, e.g., Curtis,* 700 F.2d 457; *Stephens v. Postmaster General,* 623 F.2d 594 (9th Cir. 1980); *Minnis,* 531 F.2d 850. The heart of the district court's order granting summary judgment is its determination that the most plaintiff could show would be "simple negligence." We have no doubt that the district court applied the correct standard to plaintiff's claim of unfair representation.

### PROPRIETY OF SUMMARY JUDGMENT

■ Plaintiff argues that summary judgment is never appropriate in an unfair representation case because issues of intent are involved in determining whether the Union breached its duty. It may be that issues of intent make summary judgment more difficult, but summary judgment is still available in an appropriate case. *See, e.g., Ethier v. Postal Service,* 590 F.2d 733 (8th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979); *Grovner v. Georgia-Pacific Corp.,* 625 F.2d 1289 (5th Cir.1980); *Hubicki v. ACF Industries, Inc.,* 484 F.2d 519 (3rd Cir.1973).

■ To be entitled to summary judgment, TWA and the Union were required to show, by admissible evidence, that there is no genuine issue as to whether the Union fulfilled its duty of fair representation. Rule 56(c), Fed.R.Civ.P.; 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure: Civil 2d §§ 2721, 2725 (1983) [hereinafter cited as Wright & Miller]. Defendants showed that the Union took plain-

tiff's grievance through all the steps of the grievance procedure, including arbitration before the Systems Board of Adjustment. Further, defendants showed that by the time the grievance got to arbitration the issue had come down to what was said in plaintiff's June 16 phone conversation with Schultz. All the facts noted above as undisputed were undisputed at the arbitration hearing. It was undisputed that the plaintiff had been hospitalized for a kidney stone, that TWA was aware of that fact at the time, and that plaintiff had called Schultz on June 16. The only issue at the arbitration was whether, during the June 16 phone conversation, plaintiff had given notice that he would be absent in the future, as required by Article 6(d)(10) of the collective bargaining agreement. Plaintiff claimed that he gave such notice, while Schultz and Cummings claimed he did not. Thus the arbitration hearing came down to a credibility battle between the only "witnesses" to the June 16 phone conversation. Defendants showed that when Gary Poos got plaintiff's grievance, after the step 2 hearing, he reviewed the file and went over the prior proceedings with Albert Calhoun. Before the arbitration hearing, Poos interviewed Brown and prepped him for the hearing. All the "witnesses" to the crucial June 16 phone conversation testified at the hearing. Poos successfully moved that TWA's "witnesses" be sequestered, won a dispute concerning the burden of coming forward with evidence, objected to some of TWA's evidence, cross-examined Schultz and Cummings, presented plaintiff's testimony, introduced letters from plaintiff's doctors concerning his kidney problem, and made a closing argument.

■ We hold that defendants met their initial burden to show that there was no genuine issue as to whether the Union fulfilled its duty of fair representation. *See, e.g., Harris v. Schwerman Trucking Co.,* 668 F.2d 1204 (11th Cir.1982); *Grovner,* 625 F.2d 1289; *Franklin v. Southern Pacific Transportation Co.,* 593 F.2d 899 (9th Cir.1979). Thus the burden shifted to plaintiff to come forward with admissible

evidence showing that there was a genuine issue as to whether the Union breached its duty of fair representation. Rule 56(e), Fed.R.Civ.P.; 10A Wright & Miller §§ 2727, 2739. To meet this burden plaintiff was required to come forward with admissible evidence from which a rational factfinder could conclude that the Union's handling of plaintiff's grievance was perfunctory, arbitrary, discriminatory, or in bad faith. 10–10A Wright & Miller, §§ 2713.1, 2725 at 103–04, 2727 at 175–76.

■ We have reviewed the record and conclude that plaintiff did not meet his burden. Much of plaintiff's argument to this court comes down to a claim that he should have won his grievance. However, even if plaintiff should have won, that does not show that the Union's handling of his grievance was perfunctory, arbitrary, discriminatory, or in bad faith. *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 192–93, 87 S.Ct. 903, 918, 17 L.Ed.2d 842 (1967) (fact that grievance was meritorious not sufficient grounds to find a breach of duty in refusing to take grievance to arbitration); *Findley v. Jones Motor Freight Corp.*, 639 F.2d 953, 961 (3d Cir.1981) ("If the [arbitration] panel had the essential facts before it, a decision adverse to the employee does not establish a breach of the duty of fair representation even if a court would have come to a different conclusion").

■ Plaintiff also points to the undisputed fact that in the arbitration hearing the Union put up a relatively inexperienced layman, Gary Poos, as Union representative against the experienced lawyer that the Union knew would be representing TWA. Though this might be relevant as part of a larger showing that the Union breached its duty, plaintiff's representation by Poos is not independent evidence that the Union's handling of his grievance was perfunctory, arbitrary, discriminatory, or in bad faith. *See Curtis v. United Transportation Union*, 700 F.2d 457, 458 (8th Cir. 1983) ("A union representative is not a lawyer and he cannot be expected to function as one"); *Grovner*, 625 F.2d 1289 (union's failure to supply a lawyer in arbitra-

tion will not support a claim of unfair representation). The problem with both plaintiff's complaint about Gary Poos and his claim that he should have won is simply that neither of them go to what the Union actually did and did not do to represent him.

■ Plaintiff does point to a number of things that the record shows Poos did not do in preparing for the arbitration hearing and in representing plaintiff at the hearing. These omissions must be viewed in light of the prior grievance proceedings and the narrow issue that plaintiff's case had come down to by the time of arbitration. In this light, Poos' omissions would not support a finding that the Union's handling of plaintiff's grievance was perfunctory, arbitrary, discriminatory, or in bad faith. For example, Poos' failure to interview TWA's "witnesses" to the crucial June 16 phone conversation before the arbitration hearing shows no breach of duty in light of the fact that both witnesses had told their stories at the step 2 hearing, which was reviewed by Poos. Poos' failure to present evidence at the hearing showing TWA's knowledge of plaintiff's kidney problem shows no breach of duty in light of the fact that TWA's knowledge was undisputed. *Cf. Findley*, 639 F.2d at 958–60 (employee must show prejudice from alleged breach of duty); *Smith v. Hussman Refrigerator Co.*, 619 F.2d 1229, 1241 (8th Cir.) (en banc), *cert. denied*, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980); *Hardee v. North Carolina Allstate Services, Inc.*, 537 F.2d 1255, 1258–59 (4th Cir.1976). Plaintiff argues that Poos should have raised the issue of whether plaintiff's failure to give notice of his absence was excused by "satisfactory reason" under Section 6(d)(10) of the collective bargaining agreement. However, Poos would not have been very convincing arguing both that plaintiff gave notice and that, if he did not give notice, his failure to do so was excused by "satisfactory reason." Poos' failure to raise this issue was a reasonable strategy and cannot be characterized as

perfunctory, arbitrary, discriminatory, or in bad faith. *Cf. Findley*, 639 F.2d at 960.

We have studied plaintiff's remaining arguments to this court and conclude that none of them show a genuine issue of fact that would preclude summary judgment. Many of plaintiff's arguments simply are not supported by admissible evidence in the record (some are based on clear misrepresentations or exaggerations of what appears in the record). Of plaintiff's remaining arguments that are supported by admissible evidence, some are irrelevant to the Union's handling of plaintiff's grievance and the rest simply will not support the conclusion that the Union's performance was perfunctory, arbitrary, discriminatory, or in bad faith.

With respect to the collusion issue raised by plaintiff, defendants submitted affidavits by the TWA and Union officials involved in plaintiff's grievance denying any involvement in or knowledge of collusion. This was sufficient to put the burden on plaintiff to come forward with admissible evidence from which a reasonable finder of fact could find collusion. Plaintiff failed to come forward with any such evidence.

## THE LAW CLERK ISSUE

The last issue in this case concerns an alleged conflict of interest on the part of the district court's law clerk due to the clerk's connection with a firm that regularly represented TWA. The law clerk had worked for this firm in the past and had accepted an offer to work for it in the future. Though the firm regularly represented TWA, it was not counsel for TWA in this case.

These facts were brought to the court's attention by plaintiff after partial summary judgment was granted. Plaintiff specifically stated that he was not asking that the judge recuse himself. Rather, plaintiff asked only that the partial grant of summary judgment be vacated. In a subsequent order reaffirming the partial grant of summary judgment and granting summary judgment on the remaining issues, the court stated, "Independent reconsideration has been given to this matter and [the law clerk] had a very limited role in the preparation of the current opinion."

We can find no reversible error in the district court's handling of this matter. If the law clerk's future employer had been counsel in this case, recusal might have been called for. *See Hall v. Small Business Administration*, 695 F.2d 175 (5th Cir.1983). However, that was not the case here. Further, plaintiff specifically stated that he was not asking for recusal, and plaintiff is not now seeking recusal. Short of recusal, the most plaintiff can ask is that the order on which the clerk worked be vacated and that the judge henceforth give the case his independent consideration. This is essentially what happened in the court's second order. Plaintiff is now attempting to use the law clerk issue to assure that he will get to a jury. However, plaintiff cannot abjure recusal and then be heard to complain whenever the judge rules against him.

## CONCLUSION

We affirm.